IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OPTIMUM LABORATORY SERVICES LLC, an Oklahoma limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-17-411-R |
| EAST EL PASO PHYSICIANS' MEDICAL CENTER, LLC, dba FOUNDATION SURGICAL HOSPITAL OF EL PASO, a Texas limited liability company | ) ) ) ) ) ) | |
| Defendants. | ) | |

## Order

This case involves three disputes. First and at bottom is the dispute over the merits: are Defendants liable to Plaintiff? Second: Did the parties agree to arbitrate their dispute? Third—and decisive to the Court's decision today: *Who*—the arbitrator or this Court?—gets to decide whether the parties agreed to arbitrate their claims? Because the Court determines that the parties in fact agreed to let an arbitrator and not this Court answer that question, the Court will GRANT Defendants' Motions to Compel [Docs. 10 & 11].

**I. Background**

Given the answer to that third question, the Court need not dive into the details of the underlying disagreement between the parties. Suffice it to say that Plaintiff Optimum Laboratory Services ("Optimum") contracted to upgrade the lab services at Defendant East El Paso Physicians' Medical Center ("Foundation"). The parties' Management Services

1

Agreement for Clinical Diagnostic Laboratory Services (the "Agreement")[1] also called for Optimum to manage and provide clinical lab services at Foundation in exchange for a cut of the fees generated. Foundation was in turn supposed to provide the lab space and a Medical Director who would oversee compliance with regulations under state and federal law. Also included in the Agreement, as discussed in more detail below, were provisions requiring mediation, and if necessary arbitration, should any dispute under the Agreement arise. Optimum alleges that Foundation breached the Agreement in September 2016 when, in response to an adjacent lab company's failure to abide by regulations, Foundation closed Optimum's lab space and shut down Optimum's lab services. This, and Foundation's alleged failure to pay Optimum hundreds of thousands of dollars owed under the Agreement, has apparently damaged Optimum to the tune of more than $7 million.

Optimum thus brings suit against Foundation for breach of contract, negligence, tortious interference with business relations, conversion, and indemnification. It also names Foundation's CEO, Don Burris, as a Defendant to the negligence and tortious interference claims. In response, Foundation asks the Court to order arbitration under the Federal Arbitration Act ("FAA"), or in the alternative, to transfer this case to the United States District Court for the Western District of Texas. Doc. 10. Mr. Burris requests the same, as well as that this Court dismiss him for lack of personal jurisdiction. Doc. 11. For the reasons that follow, Defendants' Motions to Compel Arbitration are GRANTED and

---

[1] See Doc. 1, Ex. 1.

the Court will order arbitration. Consequently, the Court need not address whether venue is proper or whether it has jurisdiction over Mr. Burris.

## II. Standard of Review

In resolving a motion to compel arbitration, the Court "accept[s] as true . . . factual allegations . . . that relate to the underlying dispute between the parties." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

## III. Arbitrability

Both Defendants, Foundation and its CEO Don Burris, have moved this Court under the Federal Arbitration Act ("FAA") to compel Optimum to enter mediation and, if necessary, arbitration. Defendants argue, moreover, that an arbitrator should hear any challenges to the Agreement. Optimum disagrees. It insists nothing in the agreement calls for an arbitrator to decide issues of arbitrability, and even if there were, that specific agreement between the parties is itself contractually invalid.

### A. Applicability of the FAA

The FAA governs all arbitration agreements in which the underlying transaction involves commerce. *Foster v. C.F. Turley, Jr.*, 808 F.2d 38, 40 (10th Cir. 1986). The Act's § 2, its "primary substantive provision," *Rent-A-Center*, 561 U.S. 63, 67 (2010), gives an arbitration agreement legal validity by requiring a court to enforce it:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. Arbitration agreements are therefore to be treated like any other enforceable contract, which courts are able to do with the FAA's enforcement provisions. Under § 3, a party may apply to a federal court for a stay of the trial of any action "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Defendants have requested one such stay. Aggrieved by Optimum's failure to mediate and/or arbitrate this dispute, they have also invoked § 4 to request the court "for an order directing that such arbitration proceed in the manner provided for in [their] agreement." *Id.*, § 4. Under the FAA, the Court may order the parties to arbitrate so long as there is no factual issue concerning the making of that agreement or the party's failure to adhere to that agreement. *Id.*

But federal dictates aside, only those disputes that the parties have contracted to arbitrate should wind up in arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). After all, "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 67. The first question is thus arbitrability, that is, whether the parties have agreed to submit a particular dispute to arbitration. *First Options*, 514 U.S. at 944. In other words, does the arbitration agreement at hand apply to the present dispute? And if so, is the arbitration agreement itself valid? The Court determines the latter by "apply[ing] ordinary state law principles that

4

govern the formation of contracts." *Id.* Consequently, arbitration agreements, like any other contract, are invalidated by defenses such as "fraud, duress, or unconscionability." *Rent-A-Center*, 561 U.S. at 68. Assuming no party disputes that there is a valid arbitration agreement, there is a "general presumption that a particular issue is arbitrable." *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). On the other hand, if the party disputes there is a valid enforceable arbitration agreement, that presumption simply falls away, and the Court applies state-law principles of contract law to determine if the arbitration agreement is valid and thus whether to enforce it. *Id.*

### B. Effect of a Delegation Provision

So in most cases, a Court decides whether the arbitration agreement is valid. In some cases, however, parties specifically delegate that decision to arbitrators themselves. When parties decide to do that they include in an arbitration agreement what is known as a *delegation provision*, or "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 69. Ordinarily, delegation provisions are perfectly acceptable, since the parties themselves "ha[ve] the primary power to decide arbitrability." *First Options*, 514 U.S. at 943. But these provisions run headfirst into the general presumption that it is a court—not an arbitrator—that decides whether an issue is arbitrable. As a result, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944 (internal quotes and brackets omitted); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[T]he question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.") (internal quotes omitted).

**IV. Analysis**

The parties' Agreement here involves one such delegation provision. Their Agreement requires that they first resolve any dispute through mediation:

> If any dispute arises between the parties involving this Agreement ("a Dispute") the parties shall make a good faith attempt to settle the Dispute by mediation in ElPaso [sic.], Texas. . . . If the Dispute cannot be settled by mediation, either party may give the other party and the mediation a written notice terminating the mediation process, and the Dispute shall then be resolved by arbitration.

Doc. 1, Ex. 1, at 8.

The Agreement then requires arbitration in the event mediation is unsuccessful:

> If the Dispute has not been resolved by mediation, then except as otherwise provided in this section, the Dispute shall be determined by arbitration in ElPaso [sic.], Texas . . . . *Any issue concerning whether or the extent to which the Dispute is subject to arbitration and other dispute resolution provisions of this Agreement, including issues relating to the validity or enforceability of these arbitration provisions, shall be decided by the arbitrators.*

*Id.* (emphasis added).

Due to this delegation provision, any disagreement Optimum has with whether their present dispute is arbitrable seems to be a question for the arbitrators themselves. Optimum, however, insists that the Court is not bound by the delegation provision for two reasons. One, the delegation provision is not "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide arbitrability. Two, the delegation provision itself is contractually invalid. Unfortunately for Optimum, neither argument has merit.

First, the Court is at a loss to see how there is *not* clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. The text of the Agreement is plain:

"Any issue concerning whether or the extent to which the Dispute is subject to arbitration and other dispute resolution provisions of this Agreement, including issues relating to the validity or enforceability of these arbitration provisions, *shall be decided by the arbitrators.*" Doc. 1, Ex. 1, at 8 (emphasis added). Optimum counters by reminding the Court that for the delegation provision to be enforceable it must show show "a manifestation of intent" that the parties intended to arbitrate arbitrability. *Rent-A-Center*, 561 U.S. at 70 n.1. To be sure, sometimes that clear and unmistakable evidence will be missing. For example, a party might directly challenge an arbitrator's authority to hear a dispute by filing a memorandum with him. *See First Options*, 514 U.S. at 946. But that itself is not clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Id*. Nor will there be clear and unmistakable evidence just because the agreement includes some provision calling for arbitration of disputes. The Tenth Circuit, for instance, found no clear and unmistakable evidence where the parties' agreement provided that the "[arbitration provisions] provide the mutually agreed upon and exclusive forums for resolution and settlement of employee disputes during the term of this agreement." *Communication Workers of America v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) (finding "[n]othing in that sentence suggests the parties meant to reserve for the arbitrator disputes about arbitrability[.]" And of course, where there is "no hint . . . in the contract that the parties expressed a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists," a court will have "no hesitation in concluding" that there is no clear and unmistakable evidence that the parties intended to arbitrate arbitrability. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780.

That is not what the Court has here. The Agreement explicitly delegates issues of arbitrability to an arbitrator. As for Optimum's argument that letting arbitrators decide arbitrability, i.e. their own arbitrability, is a conflict of interest, that might be so. But an arbitrator's personal stake or not, the Court cannot just gloss over the Agreement's plain text. "[T]he question who has the primary power to decide arbitrability turns upon what the parties agreed to about *that* matter." *First Options*, 514 U.S. at 943. Optimum cannot at one moment agree to arbitrate arbitrability and then renege on that agreement the next.

Nevertheless, Optimum tries to hurdle the delegation provision's plain text by pointing to the Agreement's inclusion of a severability clause. That clause provides that "[i]n the event that any provision hereof is found invalid or unenforceable *pursuant to judicial decree or decision*, the remainder of this Agreement shall remain valid and enforceable according to its terms." Doc. 1, Ex. 1, at 9. So Optimum's theory is this: the Agreement contemplates a *court* invalidating one of the Agreement's provisions; and when parties include a delegation provision, that necessarily precludes a court from ever considering the validity of an arbitration agreement; so by including the bit about a provision being invalidated "by judicial decree or decision," the parties cannot have intended to arbitrate arbitrability.

At first blush this makes sense. But it also assumes that a court faced with a delegation provision can never consider the enforceability of that provision itself, and in turn invalidate it. Yet just as parties *in court* may—assuming there is no delegation provision—challenge the contractual validity of an arbitration agreement as a whole (for, say, fraud in the inducement or duress), so too may parties contest the validity of the

8

delegation provision itself. After all, if the delegation provision itself is not contractually enforceable, then a court cannot absolve itself of all responsibility by sending a matter to an arbitrator. Put differently, the severability clause's mention of a judicial decision could always reflect the possibility that the delegation provision itself could be invalidated. If that were the case, the rest of the arbitration agreement would still stand.

This is all to say that if the delegation provision is not itself contractually valid, the Court need not enforce it. *See Rent-A-Center*, 561 U.S. at 71 – 72. "The critical matter . . . then, is the validity of the delegation provision itself." *Micheletti v. Uber Technologies, Inc.*, 213 F.Supp.3d 839, 845 (W.D. Tex. 2016). And here, this is a question that the Court must answer by applying Texas law, since the parties Agreement includes a Texas choice-of-law provision.[2]

And in applying Texas law to the delegation provision, the Court finds that it is valid and enforceable. Optimum contends it is ambiguous. But "[a] contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). As explained, the delegation provision clearly remits questions of arbitrability to the arbitrators themselves. Optimum also argues the provision is unconscionable because it limits the type of damages an

---

[2] Of course, whether a federal court sitting in diversity chooses to enforce a contract's choice-of-law provision is itself a matter of the choice-of-law rules of the forum state. *See, e.g., Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 542 (W.D. Va. 2013). Because Oklahoma courts generally honor the parties' choice of law-provision, *see Dean Witter Reynolds, Inc. v. Shear*, 796 P.2d 296, 298 (Okla. 1990), this Court is bound to apply Texas law in evaluating the delegation provision.

arbitrator may award. The Agreement does provide that arbitrators "may not award damages in excess of compensatory damages, and each party irrevocably waives any right to recover punitive, special, or consequential damages in any Dispute." Doc. 1, Ex. 1, at 8. This, though, does not render the delegation clause invalid. Admittedly, Texas law will find unconscionable arbitration clauses that limit remedies which would otherwise be available in court. *See, e.g., In re Poly-Am, L.P.*, 262 S.W.3d 337, 353 (Tex. 2008) (finding an arbitration agreement's remedies-limitation provisions invalid because it eliminated a recovery that was otherwise afforded under state statute). But an invalid remedies-limitation provision will not invalidate the entire arbitration agreement. Even the Texas Supreme Court in *In re Poly-Am* still enforced the arbitration agreement after severing and invalidating the remedies-limitation provision. *Id.* at 361. In effect, Optimum has dressed up its challenge to the remedies-limitation provision as a challenge to the arbitration agreement as a whole. Challenges to the Agreement as a whole, however, are matters for the arbitrator.

This is also why the Court need not dwell on Optimum's arguments that the parties' failure to mediate this dispute before seeking an arbitration order somehow waived any right to arbitrate. That argument is essentially that the Agreement does not apply here—a matter for the arbitrator. Yet even if the Court were to style Optimum's argument as procedural, i.e., the parties have not taken the necessary steps to invoke arbitration, "[p]rocedural questions which grow out of the dispute and bear on the final disposition are presumptively not for the judge, but for an arbitrator to decide." *Howsam*, 537 U.S. at 84. These procedural questions include whether a party has completed the first two steps of a

grievance procedure where those steps are prerequisites to arbitration, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964), along with "allegation[s] of waiver, delay, or a like defense to arbitrability." *Howsam*, 537 U.S. at 84. In sum, Optimum's challenges to the delegation provision are actually challenges to whether the Agreement applies here.

One final matter demands the Court's attention: whether Foundation's CEO, Defendant Don Burris, can compel arbitration under the Agreement. Foundation, not Mr. Burris, is the party to the Agreement. Nonetheless, Optimum has joined Mr. Burris as a Defendant on its claims for negligence and tortious interference with business relations, its theory being that both Defendants' negligence resulted in Optimum's lab closing and that this interfered with Optimum's business. Mr. Burris wants these claims against him arbitrated.

The general rule is that a non-signatory to an arbitration agreement cannot compel a signatory to that agreement. *See Grigson v .Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000). One exception to this rule, however, is where a "signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 527. That exception applies here. Optimum's Complaint makes no allegation that Mr. Burris acted independently. Rather, it groups "Defendants" together in its allegations of negligence and tortious interference.

In light of the Court's finding that it must compel arbitration, it will not consider arguments on whether this Court has jurisdiction over Mr. Burris or whether this case should be transferred to the United States District Court for the Western District of Texas.

The Court therefore GRANTS Defendants' Motions, Docs. 10 & 11, and STAYS these proceedings pending resolution of the parties' dispute pursuant to their arbitration agreement.

IT IS SO ORDERED this 20th day of June 2017.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE